IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: INSYS THERAPEUTICS INC., *et al.*, | ) | Chapter 11 |
| | ) | Case No. 19-11292 (JTD) |
| Liquidating Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| INSYS LIQUIDATION TRUST, by and through | ) | |
| WILLIAM H. HENRICH, as LIQUIDATING | ) | Adv. No. 21-50557 (JTD) |
| TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN N. KAPOOR, | ) | Civ. No. 23-1129-GBW |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Derek C. Abbott, Matthew O. Talmo, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington DE;
Eric D. Madden, Reid Collins & Tsai LLP, Dallas, TX; Keith Y. Cohan, Ryan M. Goldstein,
Morgan M. Menchaca, REID COLLINS & TSAI LLP, Austin, TX – Counsel to Plaintiff.

Michael W. McDermott, Peter C. McGivney, BERGER HARRIS LLP, Wilmington, DE; Richard C.
Pedone, Brian T. Kelly, NIXON PEABODY LLP, Boston, MA – Counsel to Defendant.

July 31, 2024
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

This matter arises out of the chapter 11 cases of Insys Therapeutics, Inc. ("Insys," and, together with certain affiliates, the "Debtors") in an adversary proceeding brought by William H. Henrich, in his official capacity as Liquidating Trustee (the "Trustee") of the Insys Liquidation Trust (the "Trust"), seeking a judgment ordering defendant Dr. John N. Kapoor ("Defendant") to repay advances made to him by Debtors for his legal defense in a criminal action in which he was convicted (Adv. D.I. 35) ("Amended Complaint").[1]  The Trustee filed a motion for partial summary judgment on Count IV of the Amended Complaint (Adv. D.I. 41), which was followed by limited discovery, briefing, and oral argument.  (Adv. D.I. 44, 55, 61, 62, 70.)  Before the Court is the Bankruptcy Court's Memorandum Opinion, dated August 17, 2023 (D.I. 1), which recommends that this Court enter final judgment against Defendant and in favor of Trustee in the total amount of $5,973,078.96.  The Memorandum Opinion constitutes the Bankruptcy Court's proposed findings of fact and conclusions of law ("Proposed FFCL") in support of final judgment, as required by Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 7052 and 9033.[2]  Defendant has objected to certain of the proposed FFCL (D.I. 1-1) ("Objections"), and the Trustee has filed his response (D.I. 1-2).  For the reasons set forth herein, the Court overrules the Defendant's Objections, and adopts the Proposed FFCL submitted by the Bankruptcy Court.

---

[1] The docket of the adversary proceeding, captioned *Insys Liquidation Trust v. Kapoor*, No. 21-50557 (JTD) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

[2] The Memorandum Opinion constituted the Bankruptcy Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.  Bankruptcy Rule 9033 provides that, in any proceeding in which the Bankruptcy Court has issued proposed findings of fact and conclusions of law, this Court "shall make a *de novo* review "of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made ... "  FED. R. BANKR. P. 9033.

## I.      BACKGROUND

As the Bankruptcy Court explained, and the record supports, Defendant is the former Chairman and CEO of Insys, whose bylaws required the company to advance expenses to its directors or officers in any legal proceeding to which the director or officer was a party by reason of the fact that the person is or was a director or officer of Insys. (Adv. D.I. 42, Ex. 1, § 45.) Defendant also executed an indemnity agreement with Insys (the "Indemnity Agreement"). (*Id.*, Ex. 2.) The Indemnity Agreement provides that Defendant is entitled to indemnification and advancement from Insys to the fullest extent permitted by the Delaware General Corporation Law (the "DGCL") for any legal proceeding related to his position at Insys. Consistent with the requirements of the DGCL, the Indemnity Agreement also provides that Defendant is not entitled to indemnification with respect to conduct found in a final judgment to be "in bad faith, knowingly fraudulent or deliberately dishonest or [to have] constituted willful misconduct (but only to the extent of such specific determination)[.]" (*Id.* § 10(a)(iii).) The Indemnity Agreement further states that Defendant "acknowledges that the execution and delivery of this agreement shall constitute an undertaking providing that Indemnitee shall, to the fullest extent required by law, repay the advance if and to the extent that it is ultimately determined by a court of competent jurisdiction in a final judgment, not subject to appeal, that [Defendant] is not entitled to be indemnified by the Company." (*Id.*)

On December 10, 2013, Insys received a subpoena from the United States Department of Health and Human Services (the "HHS Subpoena") requesting documents related to the sale and marketing of Subsys, Insys' proprietary opioid product. (Amended Complaint, ¶ 35.)

On February 29, 2016, Defendant retained Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") to represent him in connection with an investigation launched by the Department of Justice (the "DOJ Investigation"), which arose out of the HHS Subpoena.

As required by the Indemnity Agreement, on June 17, 2016, Insys began making advancements (the "Advancements") to Defendant for his attorneys' fees. The Advancements continued until September 7, 2018. (Adv. D.I. 42 at 14 and Ex. 7 ("Housley Decl.").)

In December 2016, several Insys officers and employees, were indicted in a criminal action filed by the U.S. Attorney's Office for the District of Massachusetts captioned *United States v. Babich et al.*, No. 1:16-cr-10343-ADB (D. Mass.) (the "Criminal Action"). Defendant was not initially named in the Criminal Action, but on October 24, 2017, Defendant was named in a superseding indictment (the "First Superseding Indictment"). *United States v. Babich et al.*, No. 1:16-cr-10343-ADB (D. Mass.), D.I. 183. In November 2017, Defendant retained Ropes & Gray LLP ("Ropes & Gray") to represent him as local counsel in the Criminal Action. On September 11, 2018, a grand jury returned a second superseding indictment (the "Second Superseding Indictment") modifying the charges filed against Defendant and others. *Id.*, D.I. 419.

On May 2, 2019, Defendant was convicted of violating 18 U.S.C. § 1962(d) by engaging in a racketeering conspiracy. (Amended Complaint ¶ 60.) On January 23, 2020, Defendant was sentenced to 66 months in prison, three years of supervised release, and issued a fine and forfeiture. (Adv. D.I. 42, Ex. 4 ("Kapoor Judgment").) On August 25, 2021, the First Circuit affirmed the conviction. The Supreme Court denied Defendant's petition for a writ of certiorari. *See generally United States v. Simon et al.*, 12 F.4th 1 (1st Cir. 2021), *cert. denied sub nom. Kapoor v. United States*, 142 S. Ct. 2811 (2022), and *cert. denied sub nom. Lee v. United States*, 142 S. Ct. 2812 (2022).

Pursuant to its bylaws and the Indemnity Agreement, Insys made more than $6 million in advancements to Defendant's criminal defense counsel and their vendors during the DOJ Investigation and the Criminal Action. (*See* Housley Decl.). The Trustee brought this action seeking to recoup most of those advancements. The Trustee moved for partial summary judgment

on his claim for recoupment, arguing that Defendant's criminal conviction in the Criminal Action provided conclusive proof that Defendant is not entitled to indemnification for those legal fees. (Adv. D.I. 42.)  Defendant opposed the motion for partial summary judgment (Adv. D.I. 62), arguing that the facts are not as clear as the Trustee claimed.

Significantly, Defendant argued, the law firms and vendors who received advancements at issue in the adversary proceeding performed substantial work for Defendant unrelated to the single charge upon which Defendant was eventually convicted.  The First Superseding Indictment included charges for mail fraud conspiracy, wire fraud conspiracy, conspiracy to violate the Anti-Kickback statute, and racketeering conspiracy with predicates including mail fraud, wire fraud, honest services mail and wire fraud, violations of the Travel Act, and violations of the Controlled Substances Act. *See United States v. Babich et al.*, No. 1:16-cr-103430-ADB (D. Mass.), D.I. 183. The Second Superseding Indictment brought a single count: racketeering conspiracy with predicates including mail fraud, wire fraud, honest services mail and wire fraud, and violations of the Controlled Substances Act. *Id.* at D.I. 419.

The Bankruptcy Court rejected Defendant's legal argument that he was "partially successful" in the Criminal Action and therefore entitled to partial indemnification for the legal work done in relation to any dropped charges. (*See* Mem. Op. at 6-9.)  The Bankruptcy Court further rejected Defendant's argument that his counsel was performing work related to separate, civil matters in addition to the Criminal Action, which expenses were subject to indemnification. (*Id.* at 9-11.)  Concluding that the Trustee was entitled to judgment, the Bankruptcy Court issued its Memorandum Opinion recommending partial summary judgment with respect to Count IV.

Defendant's Objections to the Proposed FFCL are fully briefed. (D.I. 1-1, 1-2.)  The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.   <u>JURISDICTION AND STANDARD OF REVIEW</u>

The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  Once a bankruptcy court determines that a pending matter is not a core proceeding under 28 U.S.C. § 157(b)(2) but is nonetheless related to a case under title 11, the court shall submit proposed findings of fact and conclusions of law to the district court.  *See* 28 U.S.C. § 157(c)(1).  Thereafter, "any final order or judgment shall be entered by the district court judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."  *Id.*  The Federal Rules of Bankruptcy Procedure provide that:

> The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

FED. R. BANKR. P. 9033(d).  "In conducting a *de novo* review, the Court must consider all of the Bankruptcy Court's findings and conclusions and afford them no presumption of validity."  *In re Montgomery Ward & Co.*, 2004 WL 323095, at *1 (D. Del. Feb. 13, 2004), *rev'd on other grounds*, 428 F.3d 154 (3d Cir. 2005).

The Bankruptcy Court recommended that this Court enter summary judgment under Federal Rule of Civil Procedure 56.  Pursuant to Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("Under Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law."). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show existence of a genuine issue") (internal quotation marks omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Finally, under the summary judgment standard, the Bankruptcy Court was required to "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## III.   ANALYSIS

Defendant has objected to these Proposed FFCL arguing that he is entitled to partial indemnification or, at the very least, that there are genuine issues of material fact that preclude entry of summary judgment in the Trustee's favor. Defendant argues that the Bankruptcy Court made two significant errors: (1) it erroneously found that the elimination of charges in a superseding indictment is not a partial success for which Defendant is entitled to indemnification; and (2) it impermissibly drew inferences in the Trustee's favor in order to resolve genuine disputes of material fact. Thus, Defendant requests that this Court reject the Bankruptcy Court's Proposed

FFCL, and deny the Trustee's motion for partial summary judgment. The Court considers each of the Defendants' Objections below.

### A.  Defendant Objects to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law that Defendant Did Not Achieve Any Success in the Criminal Action

As the Bankruptcy Court explained, the Delaware statute governing indemnification of corporate officers, 8 Del. C. § 145

> sets two boundaries for indemnification: The statute *requires* a corporation to indemnify a person who was made a party to a proceeding by reason of his service to the corporation and has achieved success on the merits or otherwise in that proceeding. At the other end of the spectrum, the statute *prohibits* a corporation from indemnifying a corporate official who was not successful in the underlying proceeding and has acted, essentially, in bad faith.

(Mem. Op. at 5 (quoting *Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1094 (Del. Ch. 2012) (emphasis in original)). The Bankruptcy Court rejected Defendant's argument that he had "achieved success on the merits *or otherwise*" on the charges dropped from the First Superseding Indictment and was therefore entitled to at least partial indemnification. (*See* Mem. Op. at 6–9.)

In an attempt to establish that there are genuine issues of material fact that precluded entry of summary judgment in the Trustee's favor, Defendant continues to argue that his conviction in the Criminal Action did not conclusively prove he is not entitled to at least partial indemnification because the indictment on which he was convicted contained fewer charges than the original indictment against him. (*See* D.I. 1-1 at 4-5.) Defendant essentially argues that he was "successful with respect to the charges contained in the First Superseding Indictment that were not included in the Second Superseding Indictment." (Mem. Op. at 6.) As the Trustee correctly points out, this argument ignores the realities of federal criminal investigations and racketeering prosecutions and the fact that the government unilaterally made minor structural changes between the two indictments.

Racketeering and racketeering conspiracies are criminal violations that require a defendant to engage in underlying "racketeering activities" beyond participating in the racketeering enterprise. *See* 18 U.S.C. § 1962. The First Superseding Indictment charged Defendant with racketeering conspiracy, and then separately charged some of the predicate racketeering activities (such as mail fraud, wire fraud, and Controlled Substances Act violations) as parallel criminal counts. (*See* Adv. D.I. 42 ¶ 24.) The Second Superseding Indictment charged Defendant with a single count of racketeering conspiracy, and included the same conduct alleged in the First Superseding Indictment as the alleged racketeering activities, rather than charging both a racketeering conspiracy and parallel counts that also covered the requisite racketeering activities. (*See id.* ¶ 26.) Thus, in each indictment, Defendant was charged with the same racketeering conspiracy and the same unlawful conduct, and in each indictment, the prosecution generally relied on the same alleged racketeering activities, whether charged as parallel counts or as predicate acts to the single racketeering conspiracy charge. At the close of the Criminal Action, "[Defendant] was convicted by a jury on all charges in the indictment on which he was tried. He did not escape from an adverse judgment but was sentenced to prison and fined." (Mem. Op. at 8.) As the Bankruptcy Court noted, Defendant has not identified any case "in support of his position that a superseding indictment is the legal equivalent of an acquittal or formal dismissal of charges against a criminal defendant." (*Id.*) Defendants' Objections offer no further support for this contention.

Delaware courts, however, have taken a broad view of "success," Defendant argues, citing *Merritt-Chapman & Scott Corp. v. Wolfson*, wherein the court stated that "[i]n a criminal action, any result other than conviction must be considered success." 321 A.2d 138, 141 (Del. Super. 1974). The Bankruptcy Court considered this argument in its thorough Memorandum Opinion and properly distinguished *Merritt,* a case finding claimants "successful" and entitled to partial indemnification with respect to fees incurred in connection with charges dismissed as part of a

plea deal. There, four claimants were charged with participating in a plan to cause their employer to secretly purchase hundreds of thousands of shares of its own common stock. *Id.* at 140. The indictment contained several counts, and following the first trial, the jury returned guilty verdicts on all charges against all claimants. *Id.* The convictions were reversed on appeal. *Id.* Some of the charges were retried, and the jury acquitted on one count, found defendants guilty on another, and reached no agreement on the remaining counts. The charges were eventually settled by plea agreement with some charges dropped in exchange.

In opposing indemnification, the company in *Merritt* argued that the DGCL requires indemnification "only where there has been vindication by a finding or concession of innocence[,]" and that because the charges against the claimants were dropped for practical reasons, not based on their innocence, "the judgment of acquittal on count four alone is not vindication." *Id.* at 141. The *Merritt* Court disagreed, stating:

> In a criminal action, any result other than a conviction must be considered a success. Going behind the result, as MCS attempts, is neither authorized by subsection (c) nor consistent with the presumption of innocence.
>
> The statute does not require complete success. It provides for indemnification to the extent of success "in defense of any claim, issue matter" in an action. Claimants are therefore entitled to partial indemnification if successful on a count of an indictment, which is an independent criminal charge, even if unsuccessful on another, related count.

*Id.* As the Bankruptcy Court explained, *Merritt* does not advance the Defendant's cause. First, the Defendant, unlike others who achieved partial "success" through a plea deal or mixed verdict, ended the Criminal Action with a conviction for the entirety of the charges in the indictment on which he was tried—the Second Superseding Indictment. Unlike the claimants in *Merritt*, Defendant did not prevail on any charges at trial, nor did he enter into a plea agreement with the government in which the prosecution agreed to drop any charges. (*See also* Mem. Op. at 6-7 (further distinguishing *Merritt*).) Second, as the Bankruptcy Court explained: "in relying on the

original indictment to demonstrate his purported success, [Defendant] asks me to look beyond the result of the Criminal Action into the circumstances of how it came to be. But this is exactly the type of inquiry that the *Merritt* Court cautioned against." (Mem. Op. at 7.)

Defendant objects to this conclusion, arguing that the fact that "the government brought a superseding indictment dropping multiple charges as well as underlying predicate acts, is determinative," because it resulted in his "escape from an adverse judgment" on the prior indicted charges, which is a "success" under the Delaware indemnification statute. (D.I. 1-1 at 5.) According to Defendant:

> There is no logical reason for treating a charge dropped through superseding indictment, as happened here, any differently than a charge dropped through plea agreement, as happened in *Merritt*, and which the court considered a "success." Neither constitutes "exoneration," but both are a "result other than conviction" for which the defendant "escape[s] from an adverse judgment."

*Id.* (quoting *Waltuch v. Conticommodity Servs., Inc.*, 88 F.3d 87, 96 (2d Cir. 1996) (noting "success" under § 145(c) "does not mean moral exoneration" and "[e]scape from an adverse judgment or other detriment, for whatever reason, is determinative.") While Defendant correctly quotes *Meritt and Waltuch*, those cases do not lead to a different outcome. Rather, as the Bankruptcy Court explained, *Merritt*'s "prohibition on looking behind the result of the underlying action was reiterated in … *Waltuch*." (*Id.*)

In *Waltuch*, the district court denied claimant's request for indemnification on the grounds that he was not "'successful on the merits or otherwise,' because [the company's] settlement payments to the plaintiffs were partially on Waltuch's behalf." *Waltuch*, 88 F.3d at 89. Applying *Merritt*, and therefore refusing to "go behind the result," the Second Circuit reversed and held that the dismissal of the suit without payment by Waltuch constituted the "success" contemplated by § 145(c). In doing so, the *Waltuch* Court expanded on the *Merritt* Court's observations regarding what constitutes "success" for purposes of the statute:

> The agents in *Merritt* rendered consideration—their guilty plea on one count—to achieve the dismissal of the other counts. The court considered these dismissals both "success" and (therefore) "vindication," and refused to "go[] behind the result" or to appraise the reason for the success. In equating "success" with "vindication," the court thus rejected the more expansive view of vindication urged by the corporation. Under *Merritt*'s holding, then, vindication, when used as a synonym for "success" under § 145(c), does not mean moral exoneration. Escape from adverse judgment or other detriment, for whatever reason, is determinative. ***According to Merritt, the only question a court may ask is what the result was, not why it was.***

*Id.* at 96 (emphasis added). Thus, "[w]hile the claimant in *Waltuch* benefited from this results-centered approach to determining 'success,'" the Bankruptcy Court explained, "the approach applies even when doing so is determinantal to the claimant." (Mem. Op. at 8). "Here, the result of both the DOJ Investigation and the Criminal Action was that [Defendant] was convicted by a jury on all charges in the indictment on which he was tried. He did not escape from an adverse judgment but was sentenced to prison and fined. That is not success. How that result came to be is irrelevant." (*Id.*)

The Court agrees that, at bottom, Defendant's "partial success" argument relies on the false premise that he prevailed on the substantive criminal counts and racketeering activities that the government omitted from the Second Superseding Indictment. As he was not tried on those charges, any finding of partial success on prior charges would require the Court to go behind the result. As Defendant has presented no authority to support this argument that a superseding indictment constitutes a successful result on prior charges, this Objection is overruled.

### B.   Defendant Objects to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law that the Law Firms Only Worked on Matters Related to the Criminal Action

In opposition to the Trustee's motion for partial summary judgment, Defendant argued that the Trustee was not entitled to such relief because he failed to submit sufficient evidence that all of the fees incurred by Defendant were for work performed in connection with the Criminal Action.

11

The Bankruptcy Court observed that the engagement letters that Defendant executed with Paul Weiss and Ropes & Gray each provide that the firms were retained to represent only Defendant and his company EJ Financial Enterprises, Inc., and only in connection with the Criminal Action. (Mem. Op. at 9; Adv. D.I. 81, Ex. A & B.)  The Bankruptcy Court found that these letters, along with the firms' invoices (Adv. D.I. 64, 65, 70), were sufficient evidence to establish that the fees incurred were for work performed in connection with Defendant's defense in the DOJ Investigation and the Criminal Action.  The Bankruptcy Court concluded, therefore, that the burden had shifted to Defendant to establish the existence of a genuine issue of material fact that would preclude summary judgment, a burden which Defendant failed to satisfy. (Mem. Op. at 9.)

Reviewing the invoice entries put forward by Defendant to demonstrate that his counsel was working on matters other than the Criminal Action, the Bankruptcy Court concluded that they did not "have the significance [Defendant] assigns to them" nor were they sufficient to establish a genuine issue of material fact. (Mem. Op. at 9–11 & n.22.)  Defendant objects to this conclusion, asserting that it was improper for the Bankruptcy Court to weigh the evidence and make inferences which are functions that should be left to a jury.  According to Defendant, the court "gave little-to-no weight to the multiple entries on the law firms' invoices demonstrating counsel's work on matters other than the Criminal Action." (D.I. 1-1 at 7.)

The Court agrees.  Defendant has attempted to create a genuine issue of material fact by cherry-picking a few time entries on the invoices to argue that these two law firms were also "work[ing] on matters other than the Criminal Action," such as civil actions brought by state regulators. (*See* D.I. 1-1 at 7.)  The Bankruptcy Court analyzed Defendant's evidence, but found that the evidence did not actually support his position, since "[i]t is not at all unusual in substantial matters involving large corporations and multiple simultaneous lawsuits for counsel in one matter to communicate with or even strategize with counsel working on related matters (whether

representing the same client as well or other co-defendants or even the company) for purposes of informing how to best represent their client." (Mem. Op. at 10 & n.22.)  In other words, the Bankruptcy Court did not improperly "weigh" competing evidence or improperly resolve disputed facts, as Defendant argues. (*See* D.I. 1-1 at 7.)  Rather, the Bankruptcy Court explained that the only evidence on which Defendant was relying—a few carefully chosen time entries from the invoices of his criminal counsel—did not actually support his argument or create a genuine dispute of material fact.

Indeed, the law firms billed these time entries to the open criminal matters, not as time spent on some unrelated or separate civil matter.  In other words, Paul Weiss and Ropes & Gray themselves determined that the time they spent keeping abreast of parallel state attorney general investigations with obvious ramifications for Defendant's criminal defense was work performed in connection with his criminal defense.  Defendant failed to introduce any evidence to demonstrate that his counsel paid attention to parallel proceedings for some purpose other than in connection with representing him on the criminal matter for which they were retained, such as an affirmation or declaration from Paul Weiss or Ropes & Gray, nor did Defendant introduce an engagement letter or other document reflecting that Paul Weiss or Ropes & Gray represented him in any other civil matters.

The Court finds no error in the Bankruptcy Court's conclusion that the invoice entries Defendant put forth were not enough to establish a genuine dispute as to a material fact. *Guiliano v. World Fuel Servs. (In re Evergreen Int'l Aviation, Inc.)*, 2018 Bankr. LEXIS 2540, at *6-7 (Bankr. D. Del. 2018) (to establish a genuine issue of material fact, "[t]here must be sufficient evidence upon which a reasonable trier of fact could return a verdict in favor of the nonmoving party"). Accordingly, this Objection is overruled.

**C.    Defendant Objects to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law Regarding Fees Incurred Prior to the Second Superseding Indictment**

The Bankruptcy Court concluded that the Defendant "submitted no evidence in support of his argument that the Trustee cannot recoup fees incurred prior to the Second Superseding Indictment." (Mem. Op. at 11.)  According to Defendant, the Bankruptcy Court has misstated his argument "that work performed prior to the Second Superseding Indictment necessarily involved work related to the charges from the First Superseding Indictment that were ultimately dropped, and therefore, for the reasons explained [in connection with his first Objection], [Defendant] is entitled to at least partial indemnification for that work." (D.I. 1-1 at 9.)  "The Bankruptcy Court's findings and conclusions … that [Defendant] 'submitted no evidence in support of his argument that the Trustee cannot recoup fees incurred prior to the Second Superseding Indictment' should be rejected," Defendant asserts.  (*Id.*)

The Court finds no error with respect to the Bankruptcy Court's conclusion.  Both the First Superseding Indictment and Second Superseding Indictment involved the same racketeering charges and predicate acts.  As discussed above, Defendant cites no case for the proposition that work performed prior to a revision to a charging document is somehow indemnifiable even following a conviction on felony criminal charges that spanned both the original and revised charging documents.  And as the Bankruptcy Court correctly observed, Defendant failed to submit any evidence that would support his argument that services performed in connection with the First Superseding Indictment were unrelated to his ultimate defense of the Second Superseding Indictment, or that would show a genuine dispute of material fact as to whether the modifications made to the charges were of such a nature that work performed prior to the Second Superseding Indictment would have had no value to Defendant's ultimate defense. (*See* Mem. Op. at 11.)  This Objection is overruled as well.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, the Proposed FFCL will be adopted and the recommended final judgment will be entered.  An appropriate order follows.